**In re MICROFAB, INC., Debtor.**

**Bankruptcy No. 87–11538–CJK.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 18, 1989.

See also, Bkrtcy., 105 B.R. 151, Bkrtcy., 105 B.R. 161.

Nancy E. Preis, Asst. Atty. Gen., Boston, Mass., for Commonwealth.

Gary W. Cruickshank, Boston, Mass., trustee.

Joel Rosenthal, Boston, Mass., for New England Laminates, Inc.

CAROL J. KENNER, Bankruptcy Judge.

This memorandum addresses the Commonwealth's Motion Requesting Declaration of Exemption from and Relief from Automatic Stay. By this motion, the Commonwealth of Massachusetts ("Commonwealth") seeks either of two alternative forms of relief. First, it seeks an order declaring that the automatic stay does not operate to stay the exercise of the Commonwealth's right to record an environmental "superlien" pursuant to Massachusetts General Laws c. 21E, § 13 [1] against real property owned by the Debtor. In the alternative, if the Court should find that the automatic stay (11 U.S.C. § 362(a)) does apply to the act of recording such a lien, the Commonwealth asks that the Court grant the Commonwealth relief from the automatic stay for the purpose of recording the lien. The Debtor's Chapter 7 Trustee in Bankruptcy (the "Trustee") opposes the motion and asks that the relief it seeks be denied.[2]

The Court concludes that the automatic stay does not stay the exercise of the Commonwealth's right to record a lien pursuant to G.L. c. 21E, § 13 against the Debtor's real property. The Court's reasoning can be summarized as follows. Section 362(b)(3) of the Bankruptcy Code creates an exception to the automatic stay for "any act to perfect an interest in property to the extent that the Trustee's rights and powers are subject to such perfection under section 546(b) of this title." Section 546(b) states:

1. Section 13 of G.L. c. 21E permits the Commonwealth to record a lien on all property owned by persons liable to the Commonwealth under G.L. c. 21E for damages related to a release of oil or hazardous material, including (among other things) the costs of assessment, containment, and removal. See G.L. c. 21E, Sec. 5 with respect to liability. Any lien recorded pursuant to Sec. 13 has priority over any encumbrance theretofore recorded with respect to any site described in the statement of claim recorded under Sec. 13 (except when the site consists of real property the greater part of which is devoted to single or multifamily housing, which is not the case here). See G.L. c. 21E, Sec. 13 (as amended by St.1983, c. 573, Sec. 3).

2. BayBank Middlesex, which allegedly holds a mortgage on the site, opposed the motion too, but not timely; for that reason, I have not considered its opposition to the motion.

"[t]he rights and powers of a trustee under sections 544, 545, and 549 are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection."

Section 13 of G.L. c. 21E is such a "generally applicable law" insofar as it applies to the real property at issue here. Therefore, the Commonwealth's recording of a lien pursuant to G.L. c. 21E, § 13 falls within the exception to the automatic stay carved out by § 362(b)(3).

## I. *Factual Background*

The Commonwealth and the Trustee agree on the facts that give rise to this motion. The Debtor, Microfab, filed a petition under Chapter 7 of the Bankruptcy Code on October 7, 1987. When it did, its assets included real property located on Haverhill Road in Amesbury, Massachusetts ("the Site"). Microfab acquired the Site in 1966. From that time until the filing of its petition under Chapter 7, it manufactured printed circuit boards and did electroplating and related activities on the Site. In the course of its operations there, it discharged substantial quantities of pollutants—heavy metals and volatile organic compounds ("VOCs")—into the soil, surface water, ground water, wetlands and stream at the Site. Tests show that the Site has been and continues to be contaminated with high and, according to Commonwealth and federal standards, unsafe levels of heavy metals and VOCs. Since 1980, the Commonwealth has listed the Site on the Massachusetts Confirmed Hazardous Waste Site List.

Accordingly, the Commonwealth's Department of Environmental Quality Engineering (the "DEQE") has for some time been compelling Microfab to assess, contain, and remove the contamination at the Site. In 1984, three years prior to the filing of Microfab's petition, it notified Microfab of its liability under G.L. c. 21E, the Massachusetts Oil and Hazardous Release Prevention and Response Act, for the releases of hazardous substances. Among other things, the DEQE required that Microfab take measures to prevent further contamination and that it hire a professional environmental consultant to assess the nature and extent of the contamination. To date, however, the Commonwealth has not recorded a lien on the Site under § 13 of G.L. c. 21E.

Now that the Debtor has filed a petition under Chapter 7 and has ceased operating, its efforts to remedy the contamination at the Site have come to a halt. The Site remains contaminated. Most efforts made thus far by the Commonwealth and the Trustee have been aimed at assessing the damages and formulating a plan of remediation. To insure that funds will be available to clean the Site and to guarantee that it will recoup the funds it may advance toward that end, the Commonwealth now seeks to record a lien on the Site pursuant to G.L. c. 21E, § 13.[3]

## II. *The Controversy*

The Commonwealth has run into a problem it would not have encountered had it recorded a lien before the filing of the petition in bankruptcy: uncertainty about the scope of the automatic stay. Section 362(a)(4) of the Bankruptcy Code states that:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities of—

(4) any act to create, perfect, or enforce any lien against property of the estate.

---

**3.** The Trustee states and the Commonwealth does not dispute that, if it were clean, the Site would have a fair market value (according to one appraisal) of $3,200,000; in its present condition, however, no one will pay anything for it. The Commonwealth estimates that the cost of cleaning the property might be as high as two million dollars. The property is apparently also encumbered by a mortgage in favor of BayBank Middlesex for approximately $1.2 million. I make no ruling here as to the validity or amount of that mortgage. Nor do I express any view on the cost of cleaning this property or on whether there will ever be any equity in the Site for unsecured creditors.

11 U.S.C. § 362(a)(4). The Trustee contends that the Commonwealth's recording of a lien under G.L. c. 21E, § 13 would be an act to create or perfect a lien against property of the estate that would therefore violate § 362(a)(4). The Trustee concludes that in order for the Commonwealth to record a lien after the filing of the bankruptcy petition, it must first obtain relief from the stay pursuant to 11 U.S.C. § 362(d).

The Commonwealth disagrees. It admits that the recording of a lien under G.L. c. 21E, § 13 is an act to perfect a lien against property of the estate, but contends that the lien authorized by G.L. c. 21E, § 13 falls within two categories of exceptions to the automatic stay. The exceptions invoked are those set forth in 11 U.S.C. § 362(b)(3) and (4):

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title ...; [or]

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

11 U.S.C. § 362(b)(3), (4). If the Commonwealth is correct in arguing that the automatic stay does not apply to the act of recording a lien under G.L. c. 21E, § 13, then it need not obtain relief from the automatic stay or any other authorization from this Court before doing so.

III. *Section 362(b)(3)*

I turn first to the issue of whether § 362(b)(3) creates an exception from the automatic stay for the recording of a lien under G.L. c. 21E, § 13. To my knowledge, no court has yet decided whether the act of recording a lien under G.L. c. 21E, § 13, or under any other environmental "superlien" statute, falls within the exception to the automatic stay set forth in § 362(b)(3).[4] Section 362(b)(3) creates an exception to the automatic stay for "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under § 546(b) of this title." The relevant portion of § 546(b) reads as follows:

(b) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

11 U.S.C. § 546(b) (Supp.1984). Therefore, the scope of the § 362(b)(3) exception depends on the scope of § 546(b)'s limitation on the Trustee's rights and powers under 11 U.S.C. §§ 544, 545 and 549.

Sections 544, 545, and 549 give the trustee in bankruptcy various rights and powers to avoid certain transfers of property of the debtor. The most significant of those powers for purposes of this motion is the one set forth in § 545(2):

**4.** For cases applying §§ 546(b) and 362(b)(3) to uphold other kinds of liens that were perfected after the commencement of the case, see *In re Casbeer,* 793 F.2d 1436, 1442–1443 (5th Cir.1986) (upholding Bank's post-petition perfection of its interest in rents); *In re WWG Industries, Inc.* 772 F.2d 810 (11th Cir.1985) (post-petition perfection of mechanics lien valid against debtor-in-possession); *In re Yobe Electric, Inc.,* 30 B.R. 114 (Bankr.W.D.Pa.1983), aff'd 728 F.2d 207 (3d Cir.1984) (post-petition perfection of mechanics lien did not violate automatic stay); *Maryland National Bank v. Mayor and City Council of Baltimore,* 723 F.2d 1138 (4th Cir.1983) (city tax lien on real property that was perfected post-petition upheld against bankruptcy trustee); *Consolidated Capital Income Trust v. Cotter, Inc.,* 47 B.R. 1008 (D.Colo.1985); *In re Mears,* 88 B.R. 419, 421 (Bankr.S.D.Fla.1988); *In re Gelwicks,* 81 B.R. 445 (Bankr.N.D.Ill.1987); *In re Murphy Electric Co., Inc.,* 78 B.R. 451 (Bankr.D.S.C. 1987); *Matter of Rief* 83 B.R. 626 (Bankr.S.D. Iowa 1988); *In re Houts,* 23 B.R. 705 (Bankr.W. D.Mo.1982); *Matter of Fiorillo & Co.,* 19 B.R. 21 (Bankr.S.D.N.Y.1982); *In re Neylon,* 18 B.R. 765 (Bankr.S.D.Ala.1982). See also 4 *Collier on Bankruptcy* par. 546.03, esp. note 2b (L. King ed.) (15th ed.1989) and cases cited therein.

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 545(2). This subsection deals with statutory liens and fixes the trustee's rights with respect to such liens as of the commencement of the case. It gives the trustee the power to avoid any statutory lien not perfected or enforceable against a hypothetical bona fide purchaser as of the commencement of the case.[5]

The lien that G.L. c. 21E, § 13 authorizes the Commonwealth to record does not come into existence at all until it is actually recorded. Section 13 itself makes that clear. It states:

Any liability to the Commonwealth under this chapter shall constitute a debt to the Commonwealth. Any such debt, together with interest thereon at the rate of twelve percent per annum from the date such debt becomes due, shall constitute a lien on all property owned by persons liable under this chapter *when a statement of claim naming such persons is recorded or filed.* (Emphasis added).

G.L. c. 21E, § 13 (as amended by St.1983 c. 573, § 3). See also *In re Hemingway Transport, Inc.,* 73 B.R. 494 (Bankr.D. Mass.1987) (Section 13 unambiguously requires the recording or filing of a statement of claim for a debt to the Commonwealth to constitute a lien on the property. *Id.* at 505–506). No one disputes that the Commonwealth had not recorded such a claim as of the commencement of this case. Therefore, the Commonwealth had no lien at that time. (See the "Memorandum and Order on Motion of Trustee for Authority to Pay Secured Claim of BayBank Middlesex," entered in this case on September 13, 1988.) Because the lien the Commonwealth now seeks to record will be perfected and enforceable, if at all, only after the commencement of this case, the Trustee will have the power under § 545(2) to avoid it unless it falls within the limitation on the Trustee's avoidance powers carved out by the first sentence of § 546(b).

In its arguments, the Commonwealth partitioned that sentence to isolate the three requirements of those statutes or laws to which the rights and powers of a Trustee are subject. First, the statute must be a "generally applicable law." Second, the law must permit the "perfection of an interest in property." And third, the interest in property must "be effective against any entity that acquires rights in such property before the date of such perfection."

a) General Applicability of G.L. c. 21E, § 13

The first requirement—that the state law be a "generally applicable law"—is a requirement that the law apply not only in bankruptcy cases but outside of bankruptcy as well. The Reports of the Senate and House Committees on the Judiciary indicate that Congress used the qualification "generally applicable" to indicate that § 546(b) was "not designed to give the states an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases." H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 86 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5872, 6327. Section 546(b) thus requires that G.L. c. 21E, § 13 apply not exclusively to those who have filed a petition under the Bankruptcy Code.

Section 13 satisfies that requirement.[6] It neither singles out nor mentions those who

---

**5.** Section 545(2) thus embodies a cardinal principle of the Bankruptcy Code: "the date of filing is the date of cleavage." That is, the rights of all parties in the assets of the estate are fixed and determined as of the date of the commencement of the case. All property rights are frozen as of that moment and cannot be altered thereafter. Among other things, this general rule creates a measure of certainty without which the administration of bankruptcy estates would be difficult, if not impossible. Section 546(b) creates a limited exception to this general rule and so should be interpreted carefully.

**6.** The Trustee does not argue otherwise.

have sought the protection of the Bankruptcy Code. Therefore, it is a "generally applicable law."

b) Whether G.L. c. 21E, § 13 "Permits Perfection"

As the Trustee concedes, § 13 of G.L. c. 21E also satisfies the second requirement of § 546(b): it "permits the perfection of an interest in property." A lien is an "interest in property". See 11 U.S.C. § 101(33) (defining "lien" as an "interest in property to secure payment of a debt or performance of an obligation"). And although the Bankruptcy Code does not define "perfection", its meaning is clear enough. To perfect a lien or other security interest is to satisfy all the conditions necessary to make the lien effective against third parties and, in the case of a statutory, non-consensual lien, against the property owner.

The state statute provides that a lien shall arise upon the filing or recording of a statement of claim. In short, § 13 permits the Commonwealth to create and perfect a lien effective against the property owner and against third party interest holders. It thus "permits the perfection of an interest in property" as that phrase is used in 11 U.S.C. § 546(b).

c) Effect of Lien Under G.L. c. 21E, § 13

Lastly, § 546(b) requires that the perfection permitted by the generally applicable law "be effective against an entity that acquires rights in such property before the date of such perfection." Section 13 of G.L. c. 21E satisfies that requirement. It states expressly that "[a]ny lien recorded, registered or filed pursuant to this section shall have priority over any encumbrance theretofore recorded, registered or filed with respect to any site ... described in such statement of claim." Thus § 13 creates an exception to the general rule that normally governs the priority of liens: first in time, first in right. Regardless of when

the Commonwealth perfects its lien, its lien primes all other encumbrances.

The Trustee makes two counter-arguments: first, that the lien authorized by § 13 of G.L. c. 21E does not become effective until it is recorded, so it is not "effective against an entity that acquires rights in such property before the date of such perfection"; and second, that § 546(b) applies only to liens that "relate back" to a date before the filing of the bankruptcy petition, which he argues the § 13 lien does not do.

Both arguments misconstrue § 546(b). In the first argument, the Trustee is correct in asserting that the Commonwealth's lien under G.L. c. 21E, § 13 does not become effective until the Commonwealth properly records a statement of claim. Section 13 itself makes that clear. See *In re Hemingway Transport*, 73 B.R. at 506. And § 546(b) requires strict compliance with the lien statute. *In re Houts*, 23 B.R. 705, 707 (Bankr.W.D. Missouri 1982); *In re Allgeier & Dyer, Inc.*, 18 B.R. 82, 87 (Bankr.W.D.Ky.1982); *In re Saberman*, 3 B.R. 316 (Bankr.N.D.Ill.1980). But § 546(b) does not focus on the date the lien becomes effective; rather it focuses on the effect the lien has once it does become effective. It asks whether the lien, once perfected, takes priority over interests in the property that were perfected before the Commonwealth's lien was perfected. If it does, then the trustee in bankruptcy may not avoid it. See *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289, 301 (Bankr.D.Mass.1988) (construing § 546(b) as affirming the validity of liens that have "retroactive effect").

A lien under § 13 of G.L. c. 21E primes—takes precedence or priority over—all earlier perfected encumbrances.[7] Section 13 of G.L. c. 21E thus satisfies the requirement of § 546(b) that the lien perfected thereunder "be effective against an entity that acquires rights in such property before the date of such perfection."

---

**7.** This priority does not apply where the site is "real property the greater part of which is devoted to single or multifamily housing." G.L. c. 21E, Sec. 13. The Site here is not such property.

■ The Trustee's second argument is that 11 U.S.C. § 546(b) applies only to liens that relate back to a date that precedes the filing of the petition in bankruptcy, and that the lien authorized by G.L. c. 21E, § 13 does not "relate back". The Court agrees that § 546(b) applies to liens that relate back to a prepetition date;[8] however, I disagree that it applies *only* to liens that relate back.

Some cases state that § 546(b) applies only to liens that "relate back" to a date that precedes the filing of the petition in bankruptcy. See, for example, *Matter of Yobe Electric, Inc.*, 30 B.R. 114, 117 (Bankr.W.D.Pa.1983), *aff'd* 728 F.2d 207 (3d Cir.1984); *Matter of Valairco, Inc.*, 9 B.R. 289 (Bankr.D.N.J.1981). See also 4 *Collier on Bankruptcy* 546.03, note 2b (L. King ed.) (15th ed. 1989) ("The relevant inquiry is whether perfection 'relates back' so as to defeat intervening rights."). The legislative history of § 546(b) too suggests that perfection must relate back: "The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law, and that perfection relates back to a date that is before the commencement of the case." H.R. Rep. 595, 95th Cong., 1st Sess. 371 (1977); S. Rep. 989, 95th Cong., 2d Sess. 86 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5872, 6327.

But § 546(b) itself does not employ the concept of "relation back," and I see no reason to read that concept into it. The concept of "relation back" is a legal fiction that permits a security interest perfected late to be treated for purposes of the "first in time, first in right" rule, which governs priority among secured creditors, as if it were perfected earlier. Its effect is to create an exception to the "first in time, first in right" rule.

Section 546(b) applies to liens that have that *effect*, regardless of whether the statutes that give rise to those liens use the *concept*, "relation back." A lien that relates back would have the crucial effect— the effect of priming earlier perfected interests—and so would fall within § 546(b), but liens that do not "relate back" might have the crucial effect as well: the lien authorized by G.L. c. 21E, § 13 is an example of one that does. Section 546(b)'s focus is on the effect of the lien. In its own, clear language, § 546(b) applies to perfected interests that are "effective against an entity that acquires rights in such property before the date of such perfection." In view of the clarity of this language, I see no reason to construe § 546(b) so narrowly as to apply only to lien statutes that employ the legal fiction of "relation back."[9] To do so would be to elevate form and semantics over substance in order to defeat a statute that clearly requires just the opposite result.

Therefore, I reject the Trustee's contention that § 546(b) applies only to liens that relate back. Rather, it applies to any lien, including the one authorized by G.L. c. 21E, § 13, that has the effect of priming an earlier perfected interest in the property.

I conclude that § 13 of G.L. c. 21E conforms to the requirements of the first sentence of 11 U.S.C. § 546(b). Accordingly, the Trustee's powers of avoidance under 11 U.S.C. §§ 544, 545 and 549 are subject to the Commonwealth's power to perfect a lien under G.L. c. 21E, § 13.

### d) Scope of § 362(b)(3) Exception

■ Pursuant to the exception to the automatic stay carved out by 11 U.S.C. § 362(b)(3), the Commonwealth can perfect its lien without thereby violating the automatic stay. In so concluding, I reject an

---

**8.** One example of a lien that relates back is the purchase money security interest. See § 9–301(2) of the Uniform Commercial Code.

**9.** The legislative history, which states that "[t]he rights granted to a creditor under this subsection prevail over the trustee only if ... that perfection relates back to a date that is before the commencement of the case," H.R. Rep. 595,

*supra* and S. Rep. 989., *supra,* does not require a different result. The legislative history should not be used to interpret a statute that is clear and unambiguous, as is § 546(b). Moreover, the legislative statement can more easily be interpreted as a semantic inaccuracy than it can as a true representation of the legislature's intent.

interpretation of § 362(b)(3) announced and followed in a recent line of cases. Specifically, some courts have held that where an act (such as the act the Commonwealth contemplates: the recording of a statement of claim) not only perfects but also creates a lien, the act is subject to the stay notwithstanding § 362(b)(3)'s exception for the act of perfection.[10] *In re New England Carpet Co.*, 26 B.R. 934, 938–939 (Bankr.D.Vt. 1983); *In re Electric City, Inc.*, 43 B.R. 336, 343–344 (Bankr.W.D.Wash.1984); *In re North Side Lumber Co.*, 59 B.R. 917 (Bankr.D.Or.1986), aff'd 83 B.R. 735 (9th Cir. BAP 1987); *Matter of Ballentine Bros. Inc.*, 86 B.R. 198, 201 (Bankr.D.Neb. 1988); and *In re Guterl Special Steel Corp.*, 95 B.R. 370, 18 BCD 1316, 1319 (Bankr.W.D.Pa.1989). But see *Matter of Maryland Glass Corp.*, 723 F.2d 1138, 1144 (4th Cir.1983). Those courts reason that § 362(a)(4) expressly stays not only acts to perfect, but also acts to create liens as well. They reason that since § 362(a)(4) distinguishes between creating and perfecting, § 362(b)(3), which mentions only perfecting, should not be interpreted to create an exception for both perfecting and creating liens. They conclude that § 362(b)(3) excepts from the stay only those acts that perfect an "underlying interest" that existed prior to the fil of the petition. *In re New England Carpet Co., Inc.*, 26 B.R. at 939. "A creditor's interest must be created prior to the petition, needing only to be perfected postpetition." *In re Guterl Special Steel Corp.*, 95 B.R. 370, 18 BCD at 1319.

I decline to follow this line of reasoning. All these cases ignore an important clause in § 362(b)(3), which states:

"(b) the filing of a petition ... does not operate as a stay—(3) *under subsection (a) of this section*, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under § 546(b) of this title."

(Emphasis added). The effect of the highlighted phrase is to indicate that the act excepted from the stay by subsection (b)(3) —perfection—shall be considered exempt from all aspects of the stay listed in subsection (a), not just from one aspect of the stay.

The need for the highlighted phrase arises from the fact that the eight subparts of the automatic stay, 11 U.S.C. § 362(a)(1) through (8), each of which lists categories of acts that are stayed by the commencement of the case, overlap. That is, several subparts often apply to a single act. For example, the act of perfecting a lien against property of the debtor would violate at least three subparts of the stay: § 362(a)(3), which stays "any act ... to exercise control over property of the estate"; § 362(a)(4), which stays "any act to ... perfect ... any lien against property of the estate"; and § 362(a)(6), which stays "any act to ... recover a claim against the debtor that arose before the commencement of the case under this title." Therefore, in order to create an exception to the stay to permit perfection of a lien that comes within 546(b), the exception must extend to all of § 362(a). Otherwise—that is, if the exception nullified only § 362(a)(4)'s injunction against any act to perfect a lien—the act of perfecting a § 546(b) lien would still be stayed by § 362(a)(3) and (6), and the exception would be meaningless and without effect. Accordingly the highlighted phrase is crucial and should not be overlooked.

The effect of that phrase in this case is to indicate that no aspect of the stay—including § 362(a)(4)'s injunction against the creation of liens against property of the estate—shall apply to the act of perfection described in § 362(b)(3). Therefore, an act to perfect a lien that comes within the § 362(b)(3) exception is excepted from the automatic stay even if it simultaneously creates a lien.[11]

---

**10.** Section 13 of G.L. c. 21E leaves no doubt that no lien or other interest in property arises until the Commonwealth files its statement of claim; so the filing of the statement of claim both creates and perfects a lien. Until the statement

of claim is filed, the Commonwealth has only a debt, which is not an interest in property.

**11.** Moreover, to conclude otherwise would be to render § 546(b) meaningless and ineffective with respect to statutory liens. Section 546(b)

I conclude that pursuant to 11 U.S.C. § 362(b)(3), the Commonwealth can record a lien against the Site under G.L. c. 21E, § 13 without thereby violating the automatic stay.

## IV. *Section 362(b)(4)*

■ The Commonwealth also argues that the act of recording a lien against the Site pursuant to G.L. c. 21E, § 13 is exempt from the automatic stay pursuant to the police power exception, 11 U.S.C. § 362(b)(4), which states:

> (b) the filing of a petition under sections 301, 302, or 303 of this title ... does not operate as a stay—
>
> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police of regulatory power.

11 U.S.C. § 362(b)(4). I conclude for two reasons that the act of recording a lien pursuant to G.L. c. 21E, § 13 does not fall within this exception to the automatic stay.

The first reason is that this exception extends only to those aspects of the stay set forth in § 362(a)(1), not to all of subsection (a). Therefore, subsections (a)(3), (a)(4), and (a)(6) remain operative and expressly stay any act to exercise control over property of the estate, § 362(a)(3), to perfect a lien against property of the estate, § 362(a)(4), and to recover a claim against the debtor that arose before the commencement of the case, § 362(a)(6). Therefore, even if the act of recording a lien pursuant to G.L. c. 21E, § 13 fell within the exception set forth in § 362(b)(4), it would still be subject to these three parts of the automatic stay.

The second reason is that the act of recording a lien pursuant to G.L. c. 21E, § 13 is a manner of enforcing a money judgment. Section 362(b)(5) makes clear that the act of enforcing a money judgment obtained in a proceeding to enforce a governmental unit's police or regulatory powers is not included in the police and regulatory power exceptions (11 U.S.C. § 362(b)(4) and (5)) and so is not exempt from the automatic stay.

I conclude that § 362(b)(4) does not create an exception to the automatic stay for the act of recording a lien pursuant to G.L. c. 21E, § 13.

## V. CONCLUSION

I conclude and will issue a separate order declaring that pursuant to 11 U.S.C. § 362(b)(3), the Commonwealth can record a lien against the Site without thereby violating the automatic stay.[12] I note that the order that shall issue will be a declaratory judgment as to whether the Commonwealth may file a lien against property of the estate without thereby violating the automatic stay. It should not be construed as a determination of the validity, priority, or extent of any lien the Commonwealth may record under G.L. c. 21E, § 13. Such a determination can be issued only after the Commonwealth actually records a lien, and only in the context of an adversary proceeding, as Bankruptcy Rule 7001(2) requires.

---

expressly limits the trustee's powers of avoidance under § 545(b), which applies solely to statutory liens. (See 11 U.S.C. § 101(45) and (47) respectively for the definitions of "security interest" and "statutory lien.") Statutory liens involve no security agreement and often become effective at once—by perfection—against both the debtor and interested third-parties. Statutory liens are thus often created and perfected by the same act. Therefore, if the exception to the automatic stay created by § 362(b)(3) were construed as narrowly as *New England Carpet* and its progeny require—so that acts within § 546(b) that simultaneously create and perfect a lien were not exempt from the stay—§ 546(b) would have no effect on the

trustee's power under § 545 to avoid statutory liens. But Congress contemplated otherwise and indicated as much by expressly including the trustee's power to avoid statutory liens among the powers that § 546(b) limits. Courts should not construe the § 362(b)(3) exception so narrowly as to render § 546(b) meaningless and ineffective as to statutory liens, especially where Congress so clearly meant for it to be effective against them.

**12.** Having so concluded, I need not address the Commonwealth's alternative request for relief from the automatic stay.

Order on Commonwealth's Motion Requesting Declaration of Exemption from and Relief from Automatic Stay

For the reasons set forth in a separate memorandum issued today, the Commonwealth's Motion Requesting Declaration of Exemption from and Relief from Automatic Stay is allowed. The Commonwealth can record a lien under G.L. c. 21E, § 13 against the Debtor's real property without thereby violating the automatic stay.

Date: August 18, 1989.