### In re 229 MAIN STREET LIMITED PARTNERSHIP, Appellant,

v.

### COMMONWEALTH OF MASSACHUSETTS, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellee.

### No. CIV.A. 99–40163–PBS.

United States District Court,
D. Massachusetts.

July 26, 2000.

---

Steven A. Kressler, Kressler, Kressler & Pitnof, Worcester, MA, for 229 Main Street Limited Partnership, Debtor.

Dana Gershengorn, Office of Attorney General, Trial Division, Boston, MA, Gail McCarthy, Woburn, MA, Carol Waserman, Gail McCarthy, Department of Environmental Protection, Wilmington, MA, Rosanna Sattler, Posternak, Blankstein & Lund, Dana Gershengorn, Attorney General's Office, Boston, MA, Richard A. Sheils, Jr., Bowditch & Dewey, Worcester, MA, for Massachusetts Department of Environmental Protection, Attorney General of Massachusetts, United States Trustee, Appellees.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. INTRODUCTION

This case springs from the cleanup of contaminated drinking water wells in Natick, Massachusetts. The Department of Environmental Protection of the Commonwealth of Massachusetts ("the Commonwealth"), the appellee, seeks to perfect an environmental superlien against the contaminated property of appellant, 229 Main Street Limited Partnership, for the cleanup costs. The sole issue on appeal is whether the Bankruptcy Court correctly held that the post-petition creation and perfection of the environmental superlien by the Commonwealth pursuant to Mass. Gen. L. c. 21E, § 13 is excepted from the Bankruptcy Code's automatic stay provision pursuant to 11 U.S.C. §§ 362(b)(3) and 546(b). After hearing, the Bankruptcy Court's ruling is *AFFIRMED.*

### II. FACTS

The Commonwealth and the appellant agree on the following facts, unless otherwise noted:

The debtor, a limited partnership, is the owner of contaminated commercial real property located at 229 Main Street in Natick, Massachusetts. The Commonwealth contends that contamination from the appellant's property migrated into the drinking water wells, causing the Commonwealth and the Town of Natick to spend a large amount of money during the pre-petition period for emergency cleanup procedures. The debtor does not dispute its liability to remediate any contamina-

tion, but disputes that it caused the contamination and the monetary amount of the cleanup costs. Before the debtor filed for bankruptcy, the Commonwealth unsuccessfully tried to negotiate with the debtor to remediate the property and recover the department's cleanup costs. The negotiations ended in stalemate.

Based on the large amount of money spent to contain the contamination which the Commonwealth claims migrated from the debtor's property, on November 5, 1998, the Commonwealth sent a letter notifying the appellant that it intended to place a priority lien on the property pursuant to Mass. Gen. L. c. 21E, § 13. *See* 310 CMR 40.1251 (May 30, 1997). On November 24, 1998, the appellant requested an adjudicatory hearing under 310 CMR § 40.1254 on the Commonwealth's notice of intent to perfect a lien on the property, and the case was assigned to an Administrative Law Judge. On June 7, 1999, the Commonwealth moved for summary decision on all issues before the Administrative Law Judge and the appellant made a motion to stay the proceedings. The Commonwealth filed an opposition to the motion to stay the proceedings and the Administrative Law Judge denied the appellant's request for a stay.

On June 16, 1999, the appellant filed a petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code and filed a Suggestion of Bankruptcy and Notice of Automatic Stay in the administrative proceedings. The Commonwealth filed an opposition to the debtor's request to stay adjudicatory proceedings. On June 29, 1999, the Administrative Law Judge declined to stay the proceedings, ruling that the actions of the Commonwealth fell within an exception to the automatic stay. On August 9, 1999, the appellant filed a motion asking the bankruptcy court to find the Commonwealth in contempt of court, order sanctions for violating the automatic stay, and grant a stay of the administrative proceedings.

After a hearing on August 12, 1999, the bankruptcy court (Queenan, J.) denied the appellant's motion, citing *In re Microfab, Inc.,* 105 B.R. 152 (Bankr.D.Mass.1989). The appellant is appealing the bankruptcy court's decision.

## III. STANDARD OF REVIEW

On appeal, the Court reviews the bankruptcy court's rulings *de novo. See In re SPM Mfg. Corp.,* 984 F.2d 1305, 1311 (1st Cir.1993); *In re DN Assocs.,* 3 F.3d 512, 515 (1st Cir.1993). The Court accepts the bankruptcy court's factual findings unless they are clearly erroneous. *See* Fed. R. Bankr.P. 8103; *In re G.S.F. Corp.,* 938 F.2d 1467, 1474 (1st Cir.1991). The bankruptcy court's remedies are upheld unless they amount to an abuse of discretion. *See In re Gonic Realty Trust,* 909 F.2d 624, 626 (1st Cir.1990); *Jeffrey v. Desmond,* 70 F.3d 183 (1st Cir.1995).

## IV. DISCUSSION

### a. *The Federal Statutory Scheme*

■ A petition in bankruptcy stays "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). It is intended to give the debtor breathing room by "stop[ping] all collection efforts, all harassment, and all foreclosure actions." *Soares v. Brockton Credit Union,* 107 F.3d 969, 975 (1st Cir. 1997) (citing H.R. Rep. No. 95–595 at 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6296). However, there are exceptions to that stay provision. The filing of a petition in bankruptcy does not operate as a stay:

> (3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section § 546(b) of this title[.]

11 U.S.C. § 362(b)(3).

■ Section 546(b), in turn, provides in relevant part: that the rights of a trustee

are subject to any "generally applicable law" that:

> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection[.]

11 U.S.C. § 546(b)(1)(A). The purpose of section 546(b) is "to protect, in spite of the surprise intervention of a bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection." 4 *Collier on Bankruptcy*, ¶ 456.03[1] at 20 (1995), citing S.Rep. No. 989, 95th Cong., Sess. 86–87 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5872-5873; H.R.Rep. No. 595 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963.

■ The exception to the bar of the automatic stay applies where a creditor has a pre-petition interest in property that can be perfected under state law at a time after a third party has acquired interests in the property. *See In re Lionel Corp.*, 29 F.3d 88, 93 (2d Cir.1994) (applying New York State lien law); *Makoroff v. City of Lockport*, 916 F.2d 890, 892 n. 1 (3d Cir. 1990) (giving U.C.C. § 9–301(2) as the prototypical statute which would qualify under the exception); *In re Maryland Glass Corp.*, 723 F.2d 1138, 1143 (4th Cir.1983) ("If that interest awaits perfection, and if the generally applicable state law permits that perfection to be good against an intervening purchaser, then the trustee should stand in no better shoes than such an intervening purchaser."); *see generally Collier* at ¶ 546.03[4] (concluding that the interest in property referred to in section 546(b) must arise and exist pre-petition). The existence of an interest in property is defined under state law. *See Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Moreover, Section 546(b) of the Code, "which does not limit its scope to liens, indeed does recognize that interests in property which may be perfected against an entity in the chain of hypothetical bona fide purchases

may also be perfected against the trustee in bankruptcy." *Maryland Glass*, 723 F.2d at 1138 n. 11.

#### b. *The Environmental Superlien*

The Commonwealth argues that the automatic stay does not apply to the act of recording a lien under G.L. c. 21E, § 13 because it is a "generally applicable law" as defined in § 546(b)(1)(A). The appellant argues that this exception to the automatic lien is not applicable because the Commonwealth did not have a pre-existing interest in the property of the debtor at the time it filed its bankruptcy petition.

■ The beginning point of this analysis is the Massachusetts Oil and Hazardous Material Prevention Act, Mass. Gen. L. c. 21E, § 13, which provides:

> Any liability to the commonwealth under this chapter shall constitute a debt to the commonwealth. Any such debt, together with interest thereon at the rate of twelve percent per annum from the date such debt becomes due, shall constitute a lien on all property owned by persons liable under this chapter when a statement of claim naming such person is recorded, registered or filed .... If the site described in such statement comprises real property, such lien shall be effective when duly recorded and indexed in the grantor index in the registry of deeds ... for the county or district wherein the land lies so as to affect its title .... Any lien recorded, registered or filed pursuant to this section shall have priority over any encumbrance theretofore recorded, registered or filed with respect to any site[.]

The superlien provision is "one of the tools provided by the statute to aid the Commonwealth in ensuring that cleanup is prompt and efficient." *Acme Laundry Co. v. Secretary of Envtl. Affairs*, 410 Mass. 760, 765, 575 N.E.2d 1086 (1991). While the United States Supreme Court has never addressed the issue of the validity of environmental superliens, two justices

have indicated that superliens are a viable method for states to ensure financing of cleanups. *See Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, 515, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (Rehnquist, J., dissenting) (noting that states retain considerable latitude to ensure priority status of their cleanup claims); *Ohio v. Kovacs,* 469 U.S. 274, 286, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) (O'Connor, J., concurring) (commenting that a state may protect "its interest in the enforcement of its environmental laws by giving clean-up judgments the status of statutory liens or secured claims.").

■ In *Acme,* the Supreme Judicial Court pinpointed the triggering event for liability under Mass. Gen. L. c. 21E, § 5(a) and thus the debt to the Commonwealth under § 13:

> In sum, c. 21E provides that liability under § 5(a)(i), and thus a debt to the Commonwealth under § 13, is created where the Commonwealth engages in "investigations, monitoring ... and other information gathering activities ...[including], without limitation, studies, services, and investigations to plan, manage, and direct assessment ... actions ...." If the DEQE incurs costs for any of those activities, then it has the authority and discretion to place a lien on all property of a responsible person by filing or recording a statement of claim. A statement of claim is defined by the statute as an instrument "declaring a lien upon the property ... for the payment of amounts due or to become due from such person ... to the Commonwealth under this chapter." G.L. c. 21E, § 2 (1990 ed.). Thus, once the Commonwealth has incurred assessment costs, it may place a lien securing both the costs already incurred and those costs which will be incurred and become due in the course of ongoing monitoring and supervision.

410 Mass. at 766, 575 N.E.2d 1086. Because the Commonwealth incurred cleanup costs prior to the petition, the liability for those costs, and hence the Appellant's debt, arose pre-petition. The question remaining is whether that debt under Section 13 is a property interest within the meaning of 11 U.S.C. § 362(b)(3).

#### c. *Microfab*

Resolving this dispute in favor of the Commonwealth, the Bankruptcy Court relied on *Microfab,* which directly addresses this superpriority lien. The Bankruptcy Judge in *Microfab* held that section 546(b)(1)(A) establishes three requirements to fall within the stay exception: 1) the statute must be "generally applicable law"; 2) the law must permit the "perfection of an interest in property"; and 3) the interest in property must "be effective against any entity that acquires rights in such property before the date of such perfection." 105 B.R. at 156. The court concluded that Chapter 21E is a generally applicable law that permits the perfection of an interest in property—the creation and perfection of a lien effective against the property owner and other third persons. *See id.* at 157; 11 U.S.C. § 101(33) (defining "lien" as an "interest in property to secure payment of a debt or performance of an obligation."). Appellant does not dispute these legal conclusions.

In *Microfab,* the Bankruptcy Court concluded that Section 13 satisfies the third requirement of § 546(b), which mandates that the perfection "be effective against an entity that acquires rights in such property before the date of such perfection." It reasoned:

> [Section 546(b)] does not focus on the date the lien becomes effective; rather, it focuses on the effect the lien has once it does become effective. It asks whether the lien, once perfected, takes priority over interests in the property that were perfected before the Commonwealth's lien was perfected. If it does, then the trustee may not avoid it.

*Microfab,* 105 B.R. at 157.

#### d. *Interest in Property*

While not attacking this analytic framework for determining the applicability of

Section 546(b)(1), appellant raises three arguments challenging the validity of the lien. First, it asserts that because the Commonwealth does not hold a pre-petition interest in property, Section 362(b)(3) is inapplicable. In *Microfab,* the bankruptcy court concluded: "Section 13 of G.L. c. 21E leaves no doubt that no lien or other interest in property arises until the Commonwealth files its statement of claim; so the filing of the statement of claim both creates and perfects a lien. Until the statement of claim is filed, the Commonwealth has only a debt, which is not an interest in property." *Id.* at 159 n. 10.

In the decade since *Microfab,* the courts have struggled with the meaning of "interest in property." In the context of the property interest of taxing entities in property required under section 546(b), the circuit courts have applied different tests, but all agree that a lien does not have to be created pre-petition. *Compare In re Parr Meadows Racing Assoc., Inc.,* 880 F.2d 1540, 1548 (2d Cir.1989) (holding that local taxing authorities acquire an interest in property for purposes of section 546(b) when the taxing authority has a "real and identifiable interest in the property which cannot be erased or altered by subsequent events"); *with Makoroff,* 916 F.2d at 895–96 (disagreeing with *Parr* and holding that the property interest does not arise until the taxing entity takes affirmative steps necessary to fix the amount of the tax and acquire the lien); *and Maryland Glass,* 723 F.2d at 1142–43 (holding that, under Maryland state law, the state acquired "an interest" under Section 546(b) on the date the taxes became due and payable, even though the interest was not a lien, but a quasi-lien).[1]

Applying the rationale of *Parr Meadows,* one bankruptcy court concluded that an insurer had a pre-petition interest in a portion of the debtor's settlement proceeds when it paid its basic reparations benefits to the debtor. *See In the Matter of Faita,*

164 B.R. 6, 10 (Bankr.D.Conn.1994) Another court held that the state established a pre-petition interest when it sent a letter informing the owner of contaminated property of the possibility that a lien could be placed on the property. *See In re Perona Bros., Inc.,* 186 B.R. 833, 838–39 (D.N.J. 1995) (finding that the state's pre-petition directive to the debtor ordering removal of the hazard, and warning of consequences, put the debtor on notice and served to assert the state's interest).

■ An analysis of Section 13 is persuasive that the Commonwealth acquired an interest in property under this case law, regardless of the test used. Its service of a notice of intent to perfect a lien on the real estate, pursuant to 310 CMR § 40.1251, demonstrated a real and identifiable interest in the property under the *Parr Meadows* rationale. The Commonwealth's pursuit of a lien, by following the regulatory notice and hearing requirements, reflects its efforts to take all affirmative steps to create and perfect a lien under the *Makoroff* rationale. Indeed, under *Maryland Glass* and *Faita,* it is arguable that the expenditures of monies for cleanup costs not only triggered a debt but also an interest in property even if the procedures for creating the lien had not commenced.

### e. *Relation back*

■ Appellant argues that § 546(b) applies only to liens that "relate back" to a date that precedes the filing of the petition in bankruptcy. Generally speaking, the "concept of 'relation back' is a legal fiction that permits a security interest perfected late to be treated for purposes of the 'first in time, first in right' rule which governs priority among security creditors, as if it were perfected earlier." *Microfab,* 105 B.R. at 157. The ambiguity on this point was spawned by legislative history which states that: "[T]he rights granted to a

1. *Parr Meadows* and *Makoroff* have been expressly overruled by 11 U.S.C. § 362(b)(18).

However, the debate is helpful in defining a property interest in other contexts.

creditor under this subsection prevail over the trustee only if ... that perfection relates back to a date that is before the commencement of the case." H.R.Rep. 595, U.S.Code Cong. & Admin.News 5963, *supra* and S.Rep. 989, U.S.Code Cong. & Admin.News 5787, *supra*.

Several courts have struggled with this aspect of the legislative history. *See In re Lionel Corp.*, 29 F.3d at 93 ("We see nothing in § 546(b) indicating that it applies only when the lienor fits within a 'relation back' statute. As long as an 'applicable law' authorizes perfection after another party has acquired interests in the property, a lienor fits within the exception."); *Microfab*, 105 B.R. at 158 n. 9 (finding that the legislative history of § 546(b) contains a "semantic inaccuracy" regarding the need for the perfection to relate back); *In re 1350 Piccard Ltd. Partnership*, 148 B.R. 83, 85 n. 2 (Bankr.D.D.C.1992) (the "legislative history [of section 546(b)] ... is itself sufficiently ambiguous as not to preclude application of § 546(b) to a perfection of a security interest against future rents.").

 The statute itself provides no requirement for retroactivity:

> The first sentence of § 546(b) requires that the perfection of the security interest 'be effective against an entity that acquires rights in such property before the date of perfection.' This requirement has been called a retroactivity requirement but the statute does not use that term and it is inaccurate thus to label the statute.

*In re 1301 Connecticut Ave. Assoc.*, 117 B.R. 2, 10 (Bankr.D.D.C.1990), *aff'd* 126 B.R. 1 (D.D.C.1991). If the words of the statute are unambiguous, judicial inquiry ends without inquiry into the legislative history. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Since § 546(b) does not contain a relation back requirement, and its terms are clear, the legislative history cannot be used as a means of construing Section 546(b) con-

trary to its plain terms. *See Microfab*, 105 B.R. at 158; *United Mine Workers of America v. Federal Mine Safety and Health Review Comm'n*, 671 F.2d 615, 621 (D.C.Cir.1982) (stating that legislative history alone "may not be used as a means for construing a statute contrary to is plain terms.").

 Appellant argues that because the lien is not effective until recorded, it does not "relate back" to a pre-petition property interest. However, under c. 21E, § 13, the lien trumps any "encumbrance theretofore recorded." Section 546(b) is applicable. The Commonwealth did not violate the automatic stay provision; its post-petition actions fell within the exception of §§ 362(b)(3) and 546(b).

## V. ORDER

The bankruptcy court's ruling is **AFFIRMED**.