In the Matter of **PERONA BROTHERS, INC., Debtor.**

Civ. A. No. 94–CV–2784(SSB).

United States District Court, D. New Jersey.

March 31, 1995.

Edward L. Paul, Weinberg, McCormick & Chatzinoff, Haddonfield, NJ, for Trustee James J. Cain.

Robert J. Campbell, Jr., Voorhees, NJ, for Debtor Perona Bros., Inc.

Deborah T. Poritz, Atty. Gen. of New Jersey by Rachel Jeanne Lehr, DAG, Trenton, NJ, for appellant State of New Jersey, Dept. of Environmental Protection.

## OPINION

BROTMAN, District Judge:

## I. INTRODUCTION

Presently before the court is a consolidated appeal by the State of New Jersey Department of Environmental Protection of the bankruptcy court's order selling the property of the debtor Perona Brothers, Inc. to Frank Perona, free and clear of the appellant's lien. Also before the court is a motion to dismiss these appeals by Trustee James J. Cain. For the reasons set forth below, the bankruptcy court's order invalidating appellant's lien and selling the property is reversed, and the matter is remanded to the bankruptcy court for further proceedings in accordance with this opinion.

## II. FACTUAL AND PROCEDURAL HISTORY

This consolidated appeal arises from two final judgments of the bankruptcy court filed respectively December 10, 1993 and July 20, 1994. Accordingly this court has jurisdiction pursuant to 28 U.S.C. § 158(a).

Perona Brothers, Inc. ("debtor") owned and operated a scrap yard located at the intersection of Route 30 and Prince Albert Road in Mullica Township, Atlantic County, New Jersey. The debtor stored between one million and two million tires at this scrap yard.[1] The New Jersey Department of Environmental Protection ("State") ordered the debtor to remove these tires because they were stored in violation of the Solid Waste Management Act, N.J.S.A. 13:1E–1–207 (1970). As a result of a tire fire on the debtor's property on May 1, 1986, the State, in a "directive" dated May 2, 1986, notified the debtor that if the State had to clean-up any hazardous waste discharge resulting from the storage of these tires, a superpriority lien[2] would be attached to the debtor's

---

1. See Affidavit of County of Atlantic's Health Officer, Appellant's Appendix at p. 39a.

2. This type of lien takes priority over any other claim or lien upon the property whether prior in time or not. *Simon v. Oldman's Township,* 497 A.2d 204, 208, 203 N.J.Super. 365, 373 (Ch.Div. 1985). See section on superpriority liens.

property[3] pursuant to the Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10–23.11—23.24 (1977).[4] The debtor did not comply with the State's order and the tires remained stored on the site in violation of the law up to and subsequent to October 31, 1986, the date on which the debtor filed bankruptcy. On that date the debtor filed for protection under the Bankruptcy Code ("Code"),[5] specifically Chapter 11.[6]

On December 6, 1986, the tires were still stored on the debtor's property in violation of the law when they caught on fire. This second tire fire, of suspicious origin, caused a discharge of hazardous substances from the property. The State expended over $92,000 in the clean-up of this discharge and filed a superpriority lien, in this amount, against the debtor's property pursuant to the State's powers under the Spill Act.

In June of 1989, the debtor's Chapter 11 reorganization proceeding was converted to a Chapter 7[7] liquidation matter and James J. Cain was appointed trustee ("trustee") of the bankrupt estate. The trustee attempted to sell the property and after failing to do so, attempted to abandon the property pursuant to the Code. Because of the environmental condition of the property and objections to the abandonment raised by Atlantic County, the trustee withdrew his abandonment request.

Subsequently, Frank Perona, Jr. ("Perona"), the president of the debtor corporation, offered to purchase the property for $8,000. The trustee petitioned the bankruptcy court to approve the sale free and clear of the State's lien.[8] The state and Mr. William Countryman ("Countryman"), another potential buyer, objected to this sale. The State objected to the sale free and clear of its lien

and Countryman made a higher offer for the property. A hearing was held before the Honorable Gloria M. Burns, United States Bankruptcy Judge on November 12, 1993. At the hearing, the bankruptcy court received Countryman's offer and allowed Perona to respond with a higher offer. The bankruptcy court overruled the State's objection to the sale by order dated December 3, 1993 approving the sale of the property free and clear of the State's lien to Perona for $12,500. Without requesting a stay of the sale pending appeal, the State appealed the bankruptcy court's order to this court. The State's appeal of the December 3rd order was docketed as Civil Action No. 94–2784.

Meanwhile, the trustee filed an adversary proceeding in the bankruptcy court to determine the extent, validity and priority of the State's lien. On May 19, 1994, during a telephone conference, Judge Burns granted summary judgment in favor of the trustee, and entered an order to this effect on July 20, 1994. The court found that the State's lien was void as a violation of the automatic stay provision of the Code. On July 29, 1994, the State appealed Judge Burn's grant of summary judgment, to this court, docketed as Civil Action No. 94–5017.

By Order dated December 19, 1994, the Honorable Robert B. Kugler, United States Magistrate Judge, granted the State's motion to consolidate these appeals Nos. 94–2784 and 94–5017 under one docket number, Civil Action No. 94–2784.

The issues raised by these consolidated appeals are 1) whether the State's lien violated the automatic stay provision of the Code, and 2) whether Perona purchased the property in "good faith" from the trustee.

---

3. In pertinent part the May 2, 1986 directive stated "failure to comply with this directive may ... cause a first priority claim and lien to be placed upon the aforementioned property ..." Page 6, May 2, 1986 Directive.

4. N.J.S.A. 58:10–23.11f(f) provides in pertinent part "[t]he notice of lien filed pursuant to this subsection which affects the property of a discharger subject to the cleanup and removal of a discharge shall create a lien with priority over all other claims or liens which are or have been filed against the property, ..."

5. 11 U.S.C. §§ 1–1330 (1978).

6. 11 U.S.C. §§ 1101–1175 (1978).

7. 11 U.S.C. §§ 701–766 (1978).

8. 11 U.S.C. § 363(f) in certain instances permits a sale of property of the bankrupt estate free and clear of liens.

## III. DISCUSSION

### A. *Standard of Review*

 The bankruptcy court's determination that the State's lien violated the "automatic stay" provision of the Code was a legal conclusion and is subject to plenary review. *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir.1989). The question of whether Perona was a "good faith" purchaser is a mixed question of law and fact. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir.1986); *Greylock Glen Corp. v. Community Sav. Bank*, 656 F.2d 1, 3 (1st Cir.1981). As a result, this court's review of this issue is mixed. The court will exercise plenary review of the "good faith" legal standard as applied by the bankruptcy court, but will review the bankruptcy court's factual findings in support of its conclusion under a clearly erroneous standard. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d at 147; *see also In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989) (where mixed questions of law and fact are presented, the appropriate standard must be applied to each component).

### B. *The Status of the State's Appeals*

 The trustee argues as a threshold matter, that the State's appeals are moot because the State did not obtain a stay of the sale of the property and the sale was consummated free and clear of the State's lien pursuant to the Judge Burns's Bankruptcy Court Order. The trustee relies on section 363(m) of the Bankruptcy Code to support this argument. As discussed in detail below, section 363(m) provides that once a sale is consummated, any subsequent reversal or modification of the order approving the sale of property will not affect the sale. However, section 363(m) also provides that the sale of the property must be made in "good faith." The Court of Appeals of the Third Circuit, when interpreting this section of the Code, has held that parties who challenge such a sale need *not* obtain a stay of the sale absent an explicit or implicit finding of "good faith" as to the purchaser's behavior at the

sales proceeding. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d at 148; *see also In re Lionel Corp.*, 29 F.3d 88, 91 (2d Cir. 1994) (refusing to dismiss appeal as moot because appellate courts can reinstate liens that have been wrongly terminated by lower courts even when intervening creditors have acquired an interest in the property).

The bankruptcy court in the instant matter did not make a finding of "good faith" at the sales proceeding as to the purchaser's behavior, as discussed in section D below. Therefore the State's appeals are not moot, and the Trustee's motion to dismiss is denied.

### C. *The Validity of the State's Lien*

 The State appeals the bankruptcy court's finding that the State's attempt to create and perfect a lien on the debtor's property was in violation of the automatic stay provision of the Code.[9] The bankruptcy court found that the State could not create and perfect a lien on the debtor's property after the debtor filed bankruptcy because the state's interest in the property did not relate back to a period prior to the bankruptcy filing. Therefore, the bankruptcy court concluded, any attempt by the State to enforce its post-filing interests violated the automatic stay provision Code.

When a party files bankruptcy, the Code's "automatic stay" provision is triggered. This provision stays the commencement or continuation of proceedings against the debtor regarding claims that arose prior to the bankruptcy filing. 11 U.S.C. § 362(a). However, section 362(b)(3) of the Code creates an exception to the "automatic stay" for "... any act to perfect an interest in property to the extent that the Trustee's rights and powers are subject to such perfection under section 546(b) of this title ..." Turning to section 546(b) of the Code, this section in pertinent part reads:

> "[t]he rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any general applicable law that permits perfection of an *interest in property* to be effective against an entity that

9. 11 U.S.C. § 362.

acquires rights in such property before the date of such perfection".

11 U.S.C. § 546(b) (emphasis added).

The court of appeals has interpreted section 546(b) to apply only to cases in which the "interest in property" is created prior to the bankruptcy filing, and its post-filing perfection relates back, as a matter of law, to the date of its creation. *Makoroff v. City of Lockport, N.Y.,* 916 F.2d 890, 892 (3d Cir. 1990) (section 546(b) is an exception to the automatic for those creditors who have a pre-petition interest in property); *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.,* 884 F.2d 80, 85 (3d Cir.1989) (exceptions to automatic stay provision which are created by section 546(b) apply only to interests in property created prior to the bankruptcy filing).

Furthermore, even section 546(b) on its face does not state that the "interest in property" must be created pre-filing, the legislative history of section 546(b) suggests that the "interest in property" must relate back to a period prior to the bankruptcy filing. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 86, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5872; H.Rep. No. 595, 95th Cong., 2d Sess. 371, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6327 (the "interest in property" under section 546(b) must relate back to a time prior to the bankruptcy filing).

Unlike the instant case, which involves an environmental cleanup lien, the leading Third Circuit cases which have dealt with this concept of "relation back" have involved generally the post-filing perfection of tax liens. *Makoroff,* 916 F.2d at 890; *Equibank,* 884 F.2d at 82. In *Makoroff,* city and county taxing authorities attempted to perfect a tax lien against the debtor post-filing of bankruptcy. The pre-filing "interest in property," that the taxing authorities alleged, was the interest that sovereign powers have over all property in their jurisdiction. The *Makoroff* court declined to adopt this rationale as far as the section 546(b) "interest in property" was con-

cerned. Relying on the analysis put forward in *Equibank,* the *Makoroff* court stated that section 546(b) means something more than the general sovereign interest that the taxing authorities asserted. The *Makoroff* court further stated that although the city and county taxing authorities may have an ever-present expectation of collecting taxes on all properties in their jurisdiction, they do not acquire a section 546(b) "interest in property" in a particular piece of property until they take all of the affirmative acts necessary to fix the amount of tax due and acquire a lien on the property. In *Makoroff,* all of the affirmative acts taken by the taxing authorities were post-filing. Therefore, the "interest in property" did not relate back to a pre-filing time and did not fall within the exception to the "automatic stay" provision of the Code.

The court in *Matter of Yobe, Elec.,* 30 B.R. 114 (Bankr.W.D.Pa.1983) determined that under Pennsylvania's mechanic's lien statute, a subcontractor's post-filing service upon the debtor of an intention to file a mechanic's lien did not violate the Code's "automatic stay" provision. *Id.* at 119. That court reasoned that even though the creditor did not file until post-petition, the creditor supplied materials pre-petition. Because these materials were the subject of the mechanic's lien the creditor's "interest in property" did relate back to a period pre-petition. The court held that the Pennsylvania Mechanic's Lien Statute did allow for a creditor to relate its "interest in property" back to the time prior to a debtor's filing of a bankruptcy petition.[10] *Matter of Yobe Elec.,* 30 B.R. at 118.

The court of appeals has not addressed the concept of whether a statutorily created lien relates back to a period pre-bankruptcy filing in a lien created by an environmental protection statute. It is therefore necessary to examine the provisions of the New Jersey environmental statute in the instant matter in order to determine whether or not the perfection [11] of the environmental lien relates

---

**10.** The pertinent part of the Pennsylvania statute that the *Matter of Yobe Elec.* court interpreted read: "[t]he lien of a claim filed under this act shall take effect and have priority (a) in the case of erection or construction of an improvement, as of the date of visible commencement of the

work of erecting or constructing the improvement." 49 P.S.A. § 1508 (1963).

**11.** The lien in the instant was perfected on March 3, 1989 when the State filed the notice of

back to an "interest in property" which existed pre-filing. The pertinent provision of the New Jersey Spill Act grants superpriority to liens filed by the Chief Executive ("Administrator") of the New Jersey Spill Compensation Fund ("Fund") in the amount of the expenditures made by the Administrator in order to cleanup property where a hazardous substance has been discharged.[12] N.J.S.A. 58:10–23.11f(f). The relevant section on superpriority liens reads as follows:

> "[t]he notice of lien filed pursuant to subsection which affects the property of the discharger subject to the cleanup and removal of a discharge shall create a lien with priority over all other claims or liens which are or have been filed against the property, . . ."

N.J.S.A. 58:10–23.11f(f).

According to the statute's plain language, an environmental lien is a superpriority lien taking priority over prior perfected interests in the subject property.[13] Moreover, New Jersey courts have recognized the state's superpriority environmental liens over others' protected interests. *See Kessler v. Tarrats*, 194 N.J.Super. 136, 147, 476 A.2d 326, 332 (App.Div.1984) (Lien in amount of expenditures made by the Administrator for cleanup of toxic wastes took priority over pre-existing tax lien and interests of assignee of a mortgage.)

New Jersey courts which have interpreted the lien provision of the Spill Act have specifically held that this lien has retroactive effect. *Simon*, 497 A.2d at 208, 203 N.J.Super. at 373. A provision such as this which establishes superpriority liens in favor of the State, allows a state to voice its economic and environmental interests. As Justice O'Connor stated, in her concurring opinion in *Ohio v. Kovacs*, 469 U.S. 274, 286, 105 S.Ct. 705, 711, 83 L.Ed.2d 649 (1985), this kind of provision allows a state to "protect its interest in the general enforcement of its environmental laws by giving cleanup judgments the status

of statutory liens or secured claims." In *Ohio v. Kovacs*, Justice O'Connor was addressing the state of Ohio's concern that the courts may impede states' enforcement of their environmental laws.

The state of New Jersey's enactment of N.J.S.A. 58–10:23f(f) thereby creating a statutory mechanism to impose a statutory lien in the amount funds expended by the state to clean-up hazardous spills, reflects this state's asserted environmental interests. This provision, which protects New Jersey's enforcement of its environmental laws, is the type of superpriority lien that Justice O'Connor recognized as valid in *Kovacs*, 469 U.S. at 286, 105 S.Ct. at 711 (O'Connor *concurring* ).

There were actually two tire fires on the debtor's property. On May 1, 1986, the first fire on Perona Brothers site occurred, resulting in a discharge of hazardous substances. Then on May 2, 1986, the State issued a directive ordering the debtor to clean-up the release of the hazardous substances. (Appellee's Appendix at p. 12, Appellant's Appendix at p. 29a).

The May 2nd directive issued by the State ordered the debtor to take immediate action to eliminate the possibility of future tire fires. The State's directive amounted to a notice to the debtor that the presence of the tires on his land posed an environmental hazard and the directive stated that the debtor must remove the tires. The directive ordered the debtor that his failure to comply with the directive could result in a first priority lien being attached to the debtor's property in the amount of any funds expended by the State for clean-up of any hazardous discharge.

On October 31, 1986, the debtor filed Chapter 11 bankruptcy. Just a little over one month later, on December 6, 1986, a second fire broke out on the debtor's property. Since the site if left alone posed a hazardous environmental condition, the Administrator expended public funds for the clean-

---

the lien with the Clerk of the Superior Court of New Jersey, thereby complying with the lien creation requirements of N.J.S.A. 58:10–23.11f(f).

**12.** The lien created by 58:10–23f(f) constitutes a debt owed to the fund.

**13.** It is axiomatic that the priority of liens in bankruptcy are determined by state property law. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Matter of Roach*, 824 F.2d 1370, 1374 (3d Cir.1987).

up. The State's interest in this property, the lien asserted by the Administrator is equal to the costs associated with the clean-up.

The debtor's failure to eliminate the hazardous condition amounts to a recognition that a second fire could occur and must be interpreted as reflecting the debtor's willingness to run the risk that the state would clean-up the property if necessary and assert its lien. The date of the second fire is irrelevant, pre or post-petition, because the debtor was on notice that a condition of his land posed an environmental threat prior to his filing for protection. Thus, the State asserted its "interest in the property" pre-petition.

The State's "interest in property" required by section 546(b) of the Code did in this case relate back to a time prior to the debtor's filing for bankruptcy protection and, as a result, the lien asserted by the State has retroactive effect. The State's assertion of its superpriority lien against the debtor's property did not violate the "automatic stay" provision of the Bankruptcy Code, and constituted a valid superpriority lien against the debtor's property. The decision of the Bankruptcy Court on this issue is reversed.

### D. *The "Good Faith" Determination.*

■ Section 363 of the Code authorizes a trustee in bankruptcy to sell, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b)(1). The trustee is further authorized under certain conditions to sell the property free and clear of other interests (i.e. liens) in the property. 11 U.S.C. § 363(f). However, such sales are subject to review on appeal as to whether the purchaser acted in "good faith". The Code states that:

> "[t]he reversal or modification on appeal of an authorization under subsection (b) ... of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such ... sale or lease were stayed pending appeal."

11 U.S.C. § 363(m).

When applying this subsection, the court of appeals has held that when a Bankruptcy Court authorizes a sale under section 363(b)(1) of the Code, the Bankruptcy Court must make a finding either implicitly or explicitly with respect to the "good faith" of the purchaser. *In re Abbotts Dairies of Penn., Inc.,* 788 F.2d at 150; *In re Stroud Ford, Inc.,* 163 B.R. 730, 732 (Bankr.M.D.Pa.1993).

■ The words "good faith" has been interpreted by courts to encompass a purchaser who purchases in "good faith" and for "value." *In re Abbotts Dairies,* 788 F.2d at 147; *In re Bel Air Assocs.,* 706 F.2d 301, 305 (10th Cir.1983). Typically, "good faith" involves the integrity of the purchaser in the course of conduct at the sales proceedings. *In re Abbotts Dairies,* 788 F.2d at 147. Misconduct that would destroy a purchaser's "good faith" status at the sales proceedings includes fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders. *Id.*

### 1. "Good Faith."

In the instant matter, the bankruptcy court over the State's objections, issued an order which approved the sale and in that order the court stated that the sale "is being made in good faith". Order Approving Private Sale at 2. However, the Bankruptcy Court did not make an explicit or implicit finding of "good faith" as to the purchaser's behavior *during* the sales proceedings as required by the law. *In re Abbotts Dairies,* 788 F.2d at 148.

The trustee argues that while there is no explicit finding of "good faith" in the purchaser's behavior at the sales proceedings, there are ample facts in the record to support an implicit finding of "good faith". (Trustee's Br. at 9). To support this argument, the trustee cites the testimony at the private sale in which the purchaser stated that he had not colluded with the other bidder or the trustee and that he had the ability to purchase the property. (Tr. at 23–25). However, this testimony also reveals that the purchaser had a fiduciary relationship to the debtor, who was, in fact, the President of the debtor corporation and that only one other

bidder participated in this auction. (Tr. 21–22).

Under these circumstances, the assertion that the bankruptcy court made an implicit finding of "good faith" must be rejected. There was no inquiry into whether the sale involved any fraud or any attempt to take advantage of the other bidder. Moreover, there was no attempt to sell the property with the lien still attached. The purchaser, Mr. Perona, was President of the debtor corporation at the time the first fire occurred. The state issued a directive addressed to Mr. Perona in his official capacity to clean-up the environmental hazard or face a potential lien. Because the debtor did not comply with the state's directive, the environmentally hazardous tires remained on the site and a second fire of "suspicious origin" [14] caused the hazardous discharge. The court is concerned that after the state incurred over $92,000 in clean-up costs because of this fire, the President of the debtor corporation then succeeded in purchasing the property free and clear of the state's $92,000 lien for a purchase price of only $12,500. In a case where a sale is made free and clear of a lien and is made to a related party to the debtor for less than the value of the lien, the situation is ripe for a finding of lack of "good faith."

This case is therefore analogous to *In re Abbotts Dairies of Pennsylvania, Inc., supra.* In that case, as here, there was a close relationship between the debtor and the purchaser. The prospective purchaser, in *Abbotts Dairies,* had hired the former Chief Executive Officer of the debtor as a senior executive at the same salary he received from the debtor. 788 F.2d at 145. In the instant matter, the president of the debtor is the purchaser. In *In re Abbotts Dairies of Pennsylvania, Inc.,* the executive testified that he hoped that upon purchase of the debtor's assets, the purchaser would relieve the executive from personal liability on several of the debtor's obligations. *Id.* at 145. Under these circumstances the *Abbotts Dairies* court remanded the case for a determination of the "good faith" of the purchaser because the record did not include sufficient

facts for the appellate court to evaluate the "good faith" of the purchaser.

### 2. For Value.

When a purchaser pays 75% of the appraisal value of the asset, courts will hold that the purchaser has given "value" for the asset. *Id.* at 148. Here, the only evidence in the record of the sales proceedings as to the property's "value" was a statement by the trustee that the property had a negative net worth. (Tr. 6). There is no additional evidence in the record upon which this statement could be based. Further there was no appraisal of the property in the record at the time of the sales proceeding. While there was an "auction" conducted between the purchaser and another bidder, this fact alone does not adequately and conclusively establish that "value" was paid. *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d at 149.

This court recognizes that in very limited circumstances a finding of "good faith" can be made by the district court. *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d at 150. In the instant matter, however, the record does not contain sufficient facts as to the "good faith" of the purchaser at the sales proceedings or the property's value for this court to make an informed decision. *See Greylock Glen Corp.,* 656 F.2d at 3 (district court decided "good faith" of purchaser on underlying facts not in dispute). For these reasons, this court will remand the matter to the bankruptcy court to permit the development of the factual record concerning the "good faith" of Mr. Perona, as purchaser.

### III. CONCLUSION

For these reasons the trustee's motion to dismiss this appeal as moot is denied, the bankruptcy court's determination that the state's lien violated the "automatic stay" provision of the Code is reversed, and the case is remanded to the Bankruptcy Court for a determination of the controlling "good faith" issue consistent with this opinion.

An appropriate order will be entered.

---

14. *See* Affidavit of County of Atlantic's Health Officer, Appellant's Appendix at p. 40a.

## ORDER DENYING MOTION TO DISMISS APPEAL AS MOOT, REVERSING IN PART AND REMANDING PROCEEDINGS TO THE BANKRUPTCY COURT

This matter having come before the court on the consolidated appeals of the appellant, the New Jersey Department of Environmental Protection, appealing the bankruptcy court's sale of the debtor's property free and clear of the appellant's liens, and the Trustee's motion to dismiss the appellant's appeal of the sale as moot;

The court having reviewed the submissions of the parties;

For the reasons set forth in the Court's opinion of this date;

IT IS on this 30th of March, 1995, hereby **ORDERED** that the trustee's motion to dismiss the appeal as moot is **DENIED,** and the bankruptcy court's order selling the property free of the appellant's lien is **REVERSED;**

It is **FURTHER ORDERED** that this case is remanded to the bankruptcy court to develop a factual record concerning the "good faith" of the purchaser, Frank Perona, Jr. and for further proceedings consistent with the court's opinion.