# United States Court of Appeals
## For the First Circuit

---

No. 00-2236

IN RE 229 MAIN STREET LIMITED PARTNERSHIP,
Debtor.

_____

229 MAIN STREET LIMITED PARTNERSHIP,
Appellant,

v.

MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION ET AL.,
Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

---

Catherine J. Savoie, with whom Rosanna Sattler, Susan S. Riedel, and Posternak, Blankstein & Lund, L.L.P. were on brief, for appellant.
Dana M. Gershengorn, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, was on brief, for appellees.

---

August 22, 2001

---

**SELYA, Circuit Judge.** Like the contaminated property that gave rise to it, the case before us demands careful handling. The pivotal question, heretofore untouched by any appellate court, is whether the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), prevents a state from simultaneously creating and perfecting an environmental superlien on a debtor's property after the institution of a bankruptcy proceeding. Both the bankruptcy court and the district court answered this surpassingly close question in the negative, holding that the environmental superlien evades the grasp of the automatic stay. We affirm.

## I. BACKGROUND

The debtor, 229 Main Street Limited Partnership, owns a shopping plaza on Main Street in Natick, Massachusetts (the Property). For many years, a dry cleaning business leased space in the plaza. As a result, the Property became profoundly contaminated with chemicals and other pollutants. In time, the Massachusetts Department of Environmental Protection (the Commonwealth) concluded that contamination from the Property posed a dire threat to drinking water in the town of Natick. To avert this threat, the Commonwealth spent large sums of money on emergency cleanup activities. It then sought reimbursement for these expenses, along with assurances in respect to anticipated

-3-

future expenditures, from the debtor. Moreover, the Commonwealth informed the debtor, by letter dated November 5, 1998, that it intended to record a lien against the Property to secure present and future cleanup costs. See Mass. Gen. Laws ch. 21E, § 13 (the environmental superlien statute).

Initially, the debtor denied responsibility for the contamination and contested the dollar amount that the Commonwealth placed on cleanup costs. Accordingly, it demanded an adjudicatory hearing. See 310 C.M.R. § 40.1254. The hearing moved slowly. Before it concluded, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101-1174. By the debtor's own admission, a principal reason behind this filing was a desire to avoid perfection of the Commonwealth's lien. To that extent, the maneuver failed; the hearing officer ruled that the environmental superlien statute fell within an exception to the automatic stay and refused to adjourn the administrative proceeding.

The debtor countered by asking the bankruptcy court to hold the Commonwealth in contempt for continuing to press forward in the postpetition period. The bankruptcy court refused the debtor's request. When the debtor appealed, the district court followed suit, ruling that the automatic stay did not preclude continuation of the proceedings necessary to

perfect the Commonwealth's environmental superlien.  See 229 Main St. Ltd. P'ship v. Mass. Dep't of Envt'l Prot., 251 B.R. 186, 193 (D. Mass. 2000).  This appeal ensued.  Because its resolution turns on questions of statutory interpretation, we exercise plenary review.  See Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 973 (1st Cir. 1997).

## II.  THE STATUTES

As this case perches at a crossroads formed by the intersection of federal and state law, we set out the pieces of the statutory puzzle before attempting to fit them together.  We begin with familiar fare:  the automatic stay provision.

The automatic stay, 11 U.S.C. § 362(a), is one of the fundamental protections afforded to debtors by the bankruptcy laws.  Midatlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot., 474 U.S. 494, 503 (1986).  It gives debtors breathing room by stopping collection efforts in their tracks and permitting their resumption only when the stay is lifted by the bankruptcy court or dissolved by operation of law.  Soares, 107 F.3d at 975.  To accomplish these objectives, the statute provides that the filing of a bankruptcy petition halts a wide variety of specified creditor activities.  See 11 U.S.C. § 362(a).  This appeal does not require us to call the roll.  It suffices for present purposes to note that the stay applies, inter alia, to

-5-

"any act to create, perfect, or enforce any lien against property of the estate."  Id. § 362(a)(4).

While the automatic stay is an important part of the bankruptcy protection framework, it is not an absolute. Congress has crafted certain exceptions to the automatic stay. See id. § 362(b).  One of them, pertinent here, makes the automatic stay inapplicable to "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the [bankruptcy] trustee's rights and powers are subject to such perfection under section 546(b) of [the Bankruptcy Code]."  Id. § 362(b)(3).  The companion statute, 11 U.S.C. § 546(b), limits the debtor's powers to avoid statutory liens[1] by providing that they "are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."  Id. § 546(b)(1)(A).  Thus, sections 362(b)(3) and 546(b)(1)(A), read together, plot the boundaries of the exception to the automatic stay which is at issue here.

_____

[1]Many of these statutes refer to the trustee in bankruptcy, acting in the debtor's stead.  For simplicity's sake, we refer throughout to debtors (although such references encompass trustees wherever applicable).

To this point, we have been discussing relevant federal statutes. But this appeal also involves a state environmental superlien statute, Mass. Gen. Laws ch. 21E, § 13 (formally known as the Massachusetts Oil and Hazardous Material Prevention Act). The state legislature designed this statute to assure the prompt and efficient cleanup of hazardous materials.[2] Acme Laundry Co. v. Sec'y of Envt'l Affairs, 575 N.E.2d 1086, 1089 (Mass. 1991). It provides in pertinent part that once the Commonwealth spends money assessing or cleaning up a polluted tract of land, it may place a priority lien on that property:

> Any liability to the commonwealth [for cleanup costs] shall constitute a debt to the commonwealth. Any such debt . . . shall constitute a lien on all property owned by persons liable under this chapter when a statement of claim naming such persons is recorded, registered or filed. . . . Any lien recorded, registered or filed pursuant to this section shall have priority over any encumbrance theretofore recorded, registered or filed with respect to any site . . . described in such statement of claim.

Mass. Gen. Laws ch. 21E, § 13.

---

[2]At least two Justices of the United States Supreme Court have signaled support for such state initiatives. See Midatlantic Nat'l Bank, 474 U.S. at 517 (Rehnquist, J., dissenting) ("States retain considerable latitude to ensure that priority status is allotted to their cleanup claims."); Ohio v. Kovacs, 469 U.S. 274, 286 (1985) (O'Connor, J., concurring) (suggesting that "a State may protect its interest in the enforcement of its environmental laws by giving cleanup judgments the status of statutory liens or secured claims").

The question here is whether the environmental superlien fits within the exception described in sections 362(b)(3) and 546(b) of the Bankruptcy Code. The debtor argues that the superlien falls outside the narrow boundaries of the exception and thus succumbs to the automatic stay. The Commonwealth demurs, maintaining that its superlien comes within the safe harbor dredged by the exception and thus evades the automatic stay. In the pages that follow, we examine these dueling interpretations.

## III.  THE STATUTES IN ACTION

Eligibility for the pertinent exception to the automatic stay depends upon the existence vel non of three elements:  there must be (1) an "act to perfect" (2) an "interest in property" (3) under circumstances in which the perfection-authorizing statute fits within the contours of section 546(b)(1)(A). We deal with the first two elements in Part III(A), reserving the third for discussion in Part III(B).

### A.  Section 362(b)(3).

In parsing section 362(b)(3), we alter the natural progression:  because the question of what constitutes an interest in property is crucial to the resolution of the questions that follow — both section 362(b)(3) and section

546(b)(1)(A) contain an "interest in property" requirement — we begin there.

   1. **"Interest in property."** The threshold question is whether the Commonwealth had a <u>prepetition</u> interest in the Property.[3] Although the parties are at loggerheads on a variety of issues, they are in perfect harmony on two important preliminary matters. First, the debtor acknowledges at this point in the proceedings that it was indebted to the Commonwealth under chapter 21E. This is as it should be, for Massachusetts law makes it pellucid that once the Commonwealth expends any funds in connection with the assessment or cleanup of a contaminated property, a debt is created. <u>See</u> <u>Acme Laundry</u>, 575 N.E.2d at 1090. Second, it is beyond cavil that at the time the debtor sought the protection of the bankruptcy court, the Commonwealth had not recorded a lien against the Property.

   These agreed facts bring us to the crucial question: Did the Commonwealth have an interest in the Property at the time the debtor filed its bankruptcy petition? On that issue,

_____

   [3]The Commonwealth advances the argument that an interest in property need not arise prior to the filing of a bankruptcy petition in order to qualify for consideration under section 362(b)(3). Because we find that the Commonwealth had a prepetition interest in the Property, <u>see</u> text <u>infra</u>, we need not reach the question of whether a postpetition interest, standing alone, could satisfy this element of the test.

the harmony dissipates. The debtor contends that section 362(b)(3)'s "interest in property" requirement only can be satisfied by the existence, prepetition, of a lien; and that, since no such lien was of record when the bankruptcy court's jurisdiction attached, the Commonwealth had no interest in the Property (and, therefore, cannot qualify for the balm of section 362(b)(3)). The Commonwealth sings a different tune. It asserts that the term "interest in property," as used in section 362(b)(3), is broader than the term "lien"; and that it had a prepetition interest in the Property arising out of a medley of factors, including its expenditures for cleanup, its right to record a superlien, its notice to the debtor that it intended to record such a lien, and its taking of all possible administrative steps toward recordation.

We conclude that the term "interest in property" is not synonymous with the term "lien." In arriving at this conclusion, we look first to the plain language of section 362(b)(3). See Boivin v. Black, 225 F.3d 36, 40 (1st Cir. 2000) (explaining that all statutory analysis must begin with the language of the particular statute sub judice). The language of an unambiguous statute normally determines its meaning. Freytag v. Commissioner, 501 U.S. 868, 873 (1991); State of R.I. v. Narragansett Indian Tribe, 19 F.3d 685, 698 (1st Cir. 1994). It

follows inexorably that when a statute's plain language points in a single direction, an inquiring court ordinarily should look no further. United States v. Hilario, 218 F.3d 19, 23 (1st Cir.), cert. denied, 121 S. Ct. 572 (2000). These principles apply here.

Congress is familiar with the word "lien," and used that word frequently in drafting the Bankruptcy Code. E.g., 11 U.S.C. §§ 361(a), 364, 544(a), 545. It is an orthodox tenet of statutory construction that "where Congress includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Duncan v. Walker, 121 S. Ct. 2120, 2125 (2001) (quoting Bates v. United States, 522 U.S. 23, 29-30 (1997)). Honoring this tenet, we ascribe considerable significance to the fact that section 362(b)(3) uses the term "interest in property" rather than the term "lien."

Giving Congress's word choices their full effect is an especially attractive option here. After all, the text of section 362(b)(3) is straightforward and leads to a perfectly plausible result. That makes the case for plain meaning extremely compelling. See Pritzker v. Yari, 42 F.3d 53, 67-68 (1st Cir. 1994) ("As a fundamental principle of statutory

construction, we will not depart from, or otherwise embellish, the language of a statute absent either undeniable textual ambiguity or some other extraordinary consideration, such as the prospect of yielding a patently absurd result.").  We therefore conclude that the term "interest in property" as used in section 362(b)(3) is broader than the term "lien."  Accord Lincoln Sav. Bank v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n), 880 F.2d 1540, 1548 (2d Cir. 1989) (finding that state's interest in property dated from the assessment of real property taxes rather than from the recordation of a tax lien);[4] Maryland Nat'l Bank v. Mayor & City Council of Baltimore (In re Maryland Glass Corp.), 723 F.2d 1138, 1142 (4th Cir. 1983) (concluding that state had an interest in real property, in the form of a right to require that sale proceeds be applied first to taxes due at the time of sale, notwithstanding absence of lien); Fitch v. Jones & Lamson Mach. Co. (In re Jones & Lamson Mach. Co.), 113 B.R. 124, 129 (Bankr. D. Conn. 1990) (finding that interest

---

[4]To be sure, the specific holding in Parr Meadows has been rendered moot by the enactment of 11 U.S.C. § 362(b)(18) (providing that the filing of a bankruptcy petition does not operate as a stay "of the creation or perfection of a statutory lien for an ad valorem property tax . . . if such tax comes due after the filing of the petition").  The reasoning of the Parr Meadows court nonetheless remains instructive, and we cite to the opinion on that basis.

in property arose when employees performed services for the debtor rather than when lien was created).

In an effort to force-feed its narrow construction of the phrase "interest in property," the debtor points out that the Bankruptcy Code defines a lien as an "interest in property" (specifically, as an "interest in property to secure payment of a debt or performance of an obligation," 11 U.S.C. § 101(37)). But the mere fact that a lien is one kind of interest in property does not mean that a lien is the only kind of interest in property recognized by section 362(b)(3). Cf. Maryland Glass, 723 F.2d at 1141-42 (finding that the term "interest in property," as used in 11 U.S.C. § 546(b), is not limited to liens).

Finally, the debtor adverts to decisions that have equated an interest in property under section 362(b)(3) with a lien. E.g., Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp., 884 F.2d 80, 85 (3d Cir. 1989) (equating "interest in property" with "lien" in context of real property taxes). Withal, "[p]roperty interests are created and defined by state law," Butner v. United States, 440 U.S. 48, 55 (1979), and these cases often turn on differences in state law, e.g, CS First Boston Mortgage Capital Corp. v. RV Centennial P'ship (In re RV Centennial P'ship), 202 B.R. 774, 777 (Bankr. D. Colo. 1996)

(distinguishing case from similar bankruptcy cases based upon differences in state property law). The fact that "interest in property" and "lien" may be synonymous under the law of a particular state or under a particular state statute does not render the terms coextensive for purposes of the Bankruptcy Code.

That ends this phase of our inquiry. We hold that "interest in property," as that term is used in 11 U.S.C. § 362(b)(3), is unequivalent to, and broader than, the term "lien." With that definitional building block in place, we move to the question of whether, under Massachusetts law, the Commonwealth had an interest in the Property.

The parties reasonably assume that, under the environmental superlien statute, a debt comes into being once the Commonwealth has incurred expenses relating to the cleanup of a particular piece of property; the debt ripens into a lien when recorded; and recording the lien simultaneously perfects it. See Mass. Gen. Laws ch. 21E, § 13. But these reference points have limited utility for purposes of our inquiry: after all, a section 13 debt is not an interest in property, see In re Microfab, Inc., 105 B.R. 152, 159 n.10 (Bankr. D. Mass. 1989), and, as discussed above, the term "lien" cannot be employed as a proxy for an "interest in property." Thus, we search for

guidance beyond the four corners of the environmental superlien statute.

In Acme Laundry, the Massachusetts Supreme Judicial Court (SJC) dealt extensively with the superlien statute. While the court did not directly answer the question before us, its discussion is quite helpful. For example, the SJC limned the statute's central purpose: to assure that the costs of environmental cleanup are "borne by those who are responsible for the release because they own or owned the land or because they caused the spill." 575 N.E.2d at 1089. The importance that the legislature attaches to this goal is illustrated by the severe sanctions imposed on those who violate cleanup orders. See Mass. Gen. Laws ch. 21E, § 11 (providing for civil penalties, fines, and imprisonment). The SJC also made clear that the liability created by the Commonwealth's expenditure of funds is wide-ranging, encompassing future costs and immediately triggering the right to record a lien. Acme Laundry, 575 N.E.2d at 1090.

In this case, the debtor was liable to the Commonwealth for past and future cleanup costs; the Commonwealth had a present right to record a lien on the Property; and it had set that process in motion by notifying the debtor of its intentions and participating vigorously in the administrative hearing

-15-

process.  Viewing these facts through the prism of <u>Acme Laundry</u>, we conclude, as did the district court, <u>229 Main St.</u>, 251 B.R. at 192, that this amalgam — the Commonwealth's expenditures, together with its notice of intent to record a lien and its tenacious pursuit of that lien through administrative channels — sufficed to satisfy section 362(b)(3)'s "interest in property" requirement.

We find support for this conclusion in the only reported case directly in point.  In that case, <u>In re Perona Bros., Inc.</u>, 186 B.R. 833 (D.N.J. 1995), the district court considered the question of a state's prepetition interest in property in the context of an environmental superlien and concluded that far less than what exists here was sufficient to establish such an interest.  The court determined that New Jersey obtained an interest in the debtor's property on the date the state notified the debtor that it would place a superpriority lien on the property if it had to commence the cleanup of toxic waste.  <u>Id.</u> at 839.  Although the state's only prepetition act was this notice — the totality of the state's cleanup efforts occurred postpetition, <u>id.</u> at 835 — the court found that solitary act sufficient to establish an interest in the property.  <u>Id.</u>  If the facts of <u>Perona Bros.</u> yielded an

interest in property, then a _fortiori_, the facts of the instant case can yield no less.

      **2.**   **"Act to perfect."**   We next turn to the "act to perfect" requirement of section 362(b)(3). When the Commonwealth takes the step of recording under the environmental superlien statute, that act both creates and perfects its lien. See Mass. Gen. Laws ch. 21E, § 13. The debtor points out that while the automatic stay applies to "any act to create, perfect, or enforce," 11 U.S.C. § 362(a)(4), section 362(b)(3) only exempts acts to perfect.[5] Based on this discrepancy, it concludes that an act which simultaneously creates and perfects cannot qualify for an exception to the automatic stay under section 362(b)(3).

      At first glance, there seems to be a deep division of authority on this point — some bankruptcy courts permitting simultaneous postpetition creation and perfection of an interest in property pursuant to section 362(b)(3) and others prohibiting such a step. But this is not the issue that actually divides those courts. Instead, the courts split over the issue of what constitutes an interest in property, and that divergence drives

---

     [5]In terms, the statute also exempts acts to maintain and continue perfection. 11 U.S.C. § 362(b)(3). Those categories are irrelevant for present purposes (and, thus, we disregard them).

the seeming disagreement over the status of "creation plus perfection." In other words, courts that hew to the proposition that "interest in property" means "lien" do not allow simultaneous postpetition creation and perfection of liens, while contrary-minded courts tend to hold the opposite.

This dichotomy makes perfect sense. The availability of Section 362(b)(3) generally is thought to depend upon the existence of a prepetition interest in property. See 3 Collier on Bankruptcy ¶ 362.05[5] (Lawrence P. King ed., 15th ed. rev. 2001) ("Section 362(b)(3) does not authorize the creation of new rights or interests for the creditor."). But cf. supra note 3. If the particular interest is a lien, that lien must be in place prepetition before section 362(b)(3) can come into play. An act that both creates and perfects a lien postpetition cannot so qualify. See, e.g., Louisville & Jefferson County Metro. Sewer Dist. v. Excel Eng'g, Inc. (In re Excel Eng'g, Inc.), 224 B.R. 582, 589-90 (Bankr. W.D. Ky. 1998) (refusing to recognize validity of postpetition creation and perfection of mechanic's lien because creditor had no lien at the time debtor filed for bankruptcy); Watervliet Paper Co. v. City of Watervliet (In re Shoreham Paper Co.), 117 B.R. 274, 281-83 (Bankr. W.D. Mich. 1990) (finding postpetition creation and perfection of property tax lien barred by automatic stay because no prepetition

interest existed); Equitable Life Assur. Soc'y v. Ballentine Bros. (In re Ballentine Bros.), 86 B.R. 198, 201 (Bankr. D. Neb. 1988) (holding that creation of a postpetition tax levy based on a prepetition assessment was barred by the automatic stay); North Side Lumber Co. v. Indus. Indem. Co. (In re North Side Lumber Co.), 59 B.R. 917, 921-23 (Bankr. D. Or. 1986) (barring filing of statutory lien that simultaneously created and perfected an interest in property because lien did not exist at the time of the bankruptcy filing).

Courts which recognize that there is no necessary congruence between an interest in property and a lien end up in a different place. Such courts routinely read the section 362(b)(3) exception to leave room for the simultaneous postpetition creation and perfection of liens based on prepetition interests in property. See, e.g., In re Summit Ventures, Inc., 135 B.R. 483, 492 (Bankr. D. Vt. 1991) (allowing postpetition creation and perfection of tax lien based on prepetition interest in form of tax assessment); Jones & Lamson Mach., 113 B.R. at 129 (permitting postpetition creation and perfection of mechanic's lien where plaintiffs' work for debtor constituted their prepetition interest in property); see also Parr Meadows, 880 F.2d at 1548 (upholding, without discussion, the simultaneous postpetition creation and perfection of a tax

-19-

lien for section 362(b)(3) purposes where the county's preexisting tax assessment constituted a prepetition interest in the property).

In our view, the plain language of section 362(b)(3) suggests the answer to the question of whether the environmental superlien statute's simultaneous creation-plus-perfection model fits under the statutory umbrella. The statute provides in pertinent part that the automatic stay does not apply to "any act to perfect . . . an interest in property. . . ." Bearing in mind that "interest in property" is broader than "lien," see supra Part III(A)(1), this language appears to cover the simultaneous creation and perfection of a lien based on a prepetition interest in property. An act that both creates and perfects in one fell swoop is an act to perfect. Since section 362(b)(3) says that the filing of a bankruptcy petition does not automatically stay an act to perfect, the simultaneous postpetition creation and perfection of a lien may come within the pertinent exception to the automatic stay so long as the creditor holds a valid prepetition interest in the property.

We buttress this conclusion with two practical observations. First, applying the debtor's interpretation — that section 362(b)(3)'s use of the unembellished word "perfect" means that an act of combined creation and perfection remains

subject to the automatic stay — would lead to an absurd result. Under the debtor's theory, an act that effected the concurrent creation and perfection of a lien would, at one and the same time, be both stayed (by section 362(a)(4)) and exempted from the stay (by section 362(a)(3)). We decline to indulge in so schizophrenic a reading of the Bankruptcy Code.

Second, statutory liens often are created and perfected by the same act. Congress clearly intended section 546(b)'s limitation on the debtor's avoidance power to extend to statutory liens; after all, section 546(b) specifically refers to section 545, which deals with the avoidance of statutory liens. Since Congress incorporated section 546(b) into the section 362(b)(3) exception, it is logical to infer that Congress intended that statutory liens would, at times, be exempt from the automatic stay. Under the debtor's interpretation, a significant class of statutory liens — those that are created and perfected by the same act — would never be exempt from the automatic stay. It seems difficult to reconcile this outcome with Congress's discernible intent.

For these reasons, we conclude that the act of simultaneous creation and perfection effectuated by the Massachusetts environmental superlien statute qualifies as an "act to perfect" under section 362(b)(3).

## B.  Section 546(b).

The Bankruptcy Code delineates the scope of a debtor's power to avoid certain creditor initiatives.  But this power is circumscribed in certain respects.  Insofar as it applies to statutory liens, this power cannot be exercised to curtail "any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."  11 U.S.C. § 546(b)(1)(A).  The purpose of section 546(b) is to "protect, in spite of the surprise intervention of a bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection."  H.R. Rep. No. 95-595, at 371-72 (1978), reprinted in 1978 U.S.C.C.A.N. 6327.  For a particular creditor to reach the haven contemplated by section 546(b)(1)(A), three elements must coalesce:  (1) the creditor must act pursuant to a law of general applicability; (2) that law must allow the creditor to perfect an interest in property; and (3) such perfection must be effective against previously acquired rights in the property.

The first of these elements requires little discussion. For a law to be "generally applicable," it must apply to cases within and without the bankruptcy sphere.  See Makoroff v. City

-22-

of Lockport, 916 F.2d 890, 892 (3d Cir. 1990). The debtor concedes that the environmental superlien statute here at issue, Mass. Gen. Laws ch. 21E, § 13, satisfies this definition. The remaining two elements require more detailed elaboration. We consolidate our discussion of them.

The debtor asserts that the superlien statute does not permit "perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A). To support this assertion, it makes three claims: that the Commonwealth held no prepetition interest in the Property; that perfection (here, the act of recording) is a prerequisite to establishing priority, but no act of recordation ever occurred; and that only state statutes that contain specific "relation back" language can come within the parameters of section 546(b). We address these claims sequentially.

Accepting for argument's sake the debtor's view that section 546(b) requires a interest in property which arises prepetition, we nonetheless find the debtor's ipse dixit that the Commonwealth had no prepetition interest in the Property foreclosed by our earlier determination that the Commonwealth in fact enjoyed such a prepetition interest. See supra Part III(A)(1). The debtor nimbly skips to another point — the lack

-23-

of a section 13 lien on the Property.  To be sure, there is no such lien — but that fact does not support the conclusion that the debtor draws from it.  The only reason that the Commonwealth has not recorded a lien is that its efforts to convert its interest in the Property into a full-blown lien have been stalled by the debtor's demand for an adjudicative hearing.  This circumstance does not preclude us from resolving the issue of whether the environmental superlien statute measures up to the specific requirements imposed by section 546(b)(1)(A).

Last, the debtor suggests, citing a snippet plucked from section 546(b)'s legislative history, that a state statute must explicitly provide that perfection relate back to a prepetition date in order to fit within the safe harbor contemplated by section 546(b)(1)(A).  There are three reasons why we find this suggestion unconvincing.  The short response to it is that section 546(b)(1)(A) enunciates no such requirement, and courts cannot limit legislation by cavalierly conjuring up qualifications that the legislature has either eschewed or neglected to consider.  See Brogan v. United States, 522 U.S. 398, 408 (1998); United States v. Sebaggala ___ F.3d ___, ___ (1st Cir. 2001) [No. 99-1349, slip op. at 7-8].  Nor can legislative history save this sinking ship.  While legislative history sometimes can be a useful aid to statutory construction,

-24-

recourse to it is impermissible to vary the words of an unambiguous statute where those words, straightforwardly applied, yield an entirely plausible result. Narragansett Indian Tribe, 19 F.3d at 698; United States v. Charles George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987). That is the case here.

The sockdolager is that the excerpt from the legislative history which the debtor hawks, read in context, does not contradict the statutory text. That excerpt states that "the rights granted under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law and the perfection relates back to a date that is before the commencement of the case." H.R. Rep. No. 95-595, supra, at 371. Contrary to the debtor's importunings, this sentence does not impose a specific relation-back requirement; it merely reiterates that, to qualify for the safe harbor, the perfection must have a retroactive effect in the sense that once an interest is perfected it will take priority over earlier perfected interests. See Klein v. Civale & Trovato, Inc. (In re Lionel Corp.), 29 F.3d 88, 93 (2d Cir. 1994) ("As long as an 'applicable law' authorizes perfection after another party has acquired interests in the property, a lienor fits within the exception."); In re Albert, 206 B.R. 636,

-25-

640 (Bankr. D. Mass. 1997) (explaining that, once perfected, a lien that takes priority over earlier liens satisfies the requirements of section 546(b)(1)(A)); In re 1301 Conn. Ave. Assocs., 117 B.R. 2, 11 (Bankr. D.D.C. 1990) (noting that section 546(b) applies to any lien that takes precedence over an earlier perfected interest in the property).

The debtor has one more shot in its sling. It invites us to accord decretory significance to the fact that the legislative history mentions a section of the Uniform Commercial Code which contains an explicit "relation back" provision, U.C.C. § 9-301(2),[6] as an example of a statute that would find sanctuary in the safe harbor created by section 546(b)(1)(A). See H.R. Rep. No. 95-595, supra, at 371. Using this as a springboard, the debtor leaps to the conclusion that section 546(b)(1)(A) implicitly requires that a qualifying state statute contain an explicit "relation back" provision. This is simply too much of a stretch: while U.C.C. § 9-301(2) is one example of a state statute that fits under the wide umbrella of section 546(b)(1)(A), other types of statutes can find shelter there as well. The key is not relation back, but, rather, whether the

---

[6]Under U.C.C. § 9-301(2) the perfection of a purchase money security interest within a certain interval relates back to the date upon which the interest was acquired. See, e.g., In re Fiorillo & Co., 19 B.R. 21, 23 (Bankr. S.D.N.Y. 1982).

statute in question provides for an interest that, once perfected, trumps earlier-filed claims. See Lionel Corp., 29 F.3d at 93; Albert, 206 B.R. at 640; 1301 Conn. Ave. Assocs., 117 B.R. at 11.

The three cases that the debtor cites in support of its argument that section 546(b)(1)(A) requires an explicit relation-back provision — Makoroff, 916 F.2d 890, Shoreham Paper, 117 B.R. 274, and In re Prichard Plaza Assocs. Ltd. P'ship, 84 B.R. 289 (Bankr. D. Mass. 1988) — are unhelpful. We review them briefly.

Makoroff involved a situation in which local taxing authorities claimed, pursuant to section 546(b)(1)(A), that they had a right to a priority lien on the debtor's property to secure unpaid property taxes accruing after bankruptcy proceedings had been instituted. 916 F.2d at 891. The court found section 546(b)(1)(A) inapplicable because the debt did not relate back to any prepetition interest in the taxed property. Id. at 893-96. The case stands for the proposition that section 546(b)(1)(A) requires a prepetition interest, not for the proposition that a statute must contain an explicit relation-back provision to qualify under section 546(b)(1)(A).

Shoreham Paper is similarly inapposite. There, the bankruptcy court held that a tax lien created and perfected

-27-

postpetition did not come within the ambit of 546(b)(1)(A) because the lien did not relate back to a prepetition date. 117 B.R. at 281. The case states no rule requiring that a statute have an explicit relation-back requirement, and moreover, it is distinguishable on the ground that the actual amount of the tax was determined, and the tax bill issued, _after_ the taxpayer had filed for bankruptcy. See _id._ at 275-76. This, the court found, did not give rise to a prepetition interest. _Id._ at 281.

We regard _Prichard Plaza_ as an outlier. There, the bankruptcy court coined an oddly suggestive phrase in construing section 546(b) as applying only to statutes that accorded "retroactive priority effect." 84 B.R. at 301. But it is not clear whether the court was advocating a strict requirement that qualifying state statutes must contain specific "relation back" language; and, at any rate, a later case from the same court repudiates such a requirement. See _Microfab_, 105 B.R. at 158; see also _1301 Conn. Ave. Assocs._, 117 B.R. at 10-11 (rejecting the idea that section 546(b) contains a strict retroactivity requirement); cf. _In re 1350 Piccard Ltd. P'ship_, 148 B.R. 83, 85 (Bankr. D.D.C. 1992) (concluding that any contrary suggestion in _Prichard Plaza_ has been abrogated).

As opposed to these cases, we find more persuasive the view of the only other court of appeals to have addressed the

-28-

precise question. In Lionel Corp., 29 F.3d at 93, the Second Circuit discerned "nothing in § 546(b) indicating that it applies only when the lienor fits within a 'relation-back' statute." We share this view and, accordingly, we hold that there is no requirement that the "generally applicable law" referenced in section 546(b) contain an explicit relation-back mechanism.

We now circle back to the original inquiry: whether the Massachusetts environmental superlien statute meets the second and third of section 546(b)(1)(A)'s stated criteria, that is, whether it "permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." The gist of section 546(b)(1)(A) is that "the filing of a bankruptcy petition does not prevent the holder of an interest in property from perfecting its interest if, absent the bankruptcy filing, the interest holder could have perfected its interest against an entity acquiring rights in the property before the date of perfection." 5 Collier on Bankruptcy, supra, ¶ 546.03[2][a]. In this instance, the environmental superlien statute permits the perfection of an interest in property by recording, registering, or filing that interest. See Microfab, 105 B.R. at 156. Such perfection plainly is effective against entities

which already had acquired rights in the property.  See Mass. Gen. Laws ch. 21E, § 13 ("Any lien recorded, registered or filed pursuant to this section shall have priority over any encumbrance theretofore recorded, registered or filed with respect to any site . . . described in such statement of claim."); see also Microfab, 105 B.R. at 156 (explaining that the Commonwealth's lien trumps all other encumbrances, no matter when filed).  These credentials satisfy section 546(b)(1)(A)'s third criterion, see Lionel Corp., 29 F.3d at 93, and, therefore, the environmental superlien statute meets all the eligibility requirements for inclusion within section 546(b)(1)(A).

## V. CONCLUSION

We need go no further.  The statutory lien that the Commonwealth wishes to record meets the combined requirements of section 362(b)(3) and 546(b)(1)(A) and therefore falls within the exception to the automatic stay carved out by those

provisions.[7]  Consequently, we uphold the decisions of the lower

courts.


**Affirmed.**

---

[7]In its appellate briefs, the debtor theorizes that placing environmental superliens outside the Bankruptcy Code's automatic stay provision frustrates congressional intent (and, therefore, offends the Supremacy Clause).  Because this argument was not raised below, it is waived.  See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.").  In any event, our conclusion that the superlien statute falls within an exception created by federal law precludes any persuasive argument that Congress intended otherwise.